## BICKLEY v. COMMERCIAL BANK.

1. CERTIFICATE OF DEPOSIT—PAROL TESTIMONY.—A certificate acknowledging a deposit of money with "C. J. I., Manager," promising repayment of the deposit with interest, and signed "C. J. I., Manager," cannot, in action thereon against a bank of which C. J. I. was president, be shown by parol testimony to have been a deposit in such bank, there being no evidence that the president had any authority to receive deposits or had ever been designated as manager of the defendant bank, or had ever so signed himself.

2. IBID.—IBID.—A certificate of deposit promising to repay the amount stated with interest on a day certain, is more like a promissory note than a receipt, and cannot be varied by parol testimony, as receipts may.

3. IBID.—BANK PRESIDENT—CASES CRITICISED.—This case distinguished from other cases in which there was fraud or mistake, or in which the depositor had an account in the bank and paid his money over to the cashier or teller, or could not read.

4. IBID.—CAUSE OF ACTION—EVIDENCE.—While the complaint did not set out the certificate of deposit as plaintiff's cause of action, yet it was the cause of action reduced to writing, and only this writing could be received as evidence of the contract of deposit.

5. PRODUCTION OF WRITTEN PAPERS—EVIDENCE.—If a written paper is in court, it may be called for without notice being previously given to produce; and a witness may be asked as to payments of interest to her on a certificate of deposit not in suit, in contradiction of plaintiff's testimony, that the defendant bank had never paid interest on certificates of deposit.

6. DEPOSITS—PRESIDENT OF BANK.—The defence being that plaintiff's money when deposited went to the credit of the president of the bank, not as president, but as manager of another business, the judge, in charging the jury that the bank would be liable if the money went into the bank, should have added the words, "as the money of the plaintiff."

7. BANKS—OFFICERS—FRAUD.—This charge properly declared the law as to the liability of a bank for the fraud, &c., of its agents.

8. AN EXCEPTION based upon a misconception of the charge to the jury over-ruled.

9. CHARGING JURIES.—FACTS—The judge properly refused to charge, that if the jury believed that plaintiff's money was placed by the president of the defendant bank to his credit as manager of another business, it could not be said to have reached the bank as the money of the plaintiff, for such a charge would have trenched upon the province of the jury, and, also, have confined the issues within too narrow limits.

10. WRITTEN INSTRUMENTS.—The trial judge must construe written instruments; and as there was nothing in this certificate of deposit to indicate

28—39

any connection of the defendant bank therewith, the judge should have so charged as requested.

11. CHARGE ON FACTS.—The trial judge cannot charge the jury as to the force and effect of the testimony.

12. BANK PRESIDENTS—DEPOSITS—ONUS PROBANDI.—It would seem that the president of a bank has not, ordinarily, the right to receive deposits into his bank. And where a deposit was paid to the president, and the depositor sues the bank for its recovery, it is incumbent upon the plaintiff to show that the president had authority, express or implied, to receive the deposit, or that it was actually received by the bank as plaintiff's money.

13. NEW TRIAL—APPEAL.—The refusal of a motion for new trial on the facts is not reviewable on appeal.

Before IZLAR, J., Richland, April, 1892.

In this case, Hon. Ernest Gary, judge-elect of the Fifth Circuit, sat in the seat of Mr. Justice McGowan, who was disqualified by interest. It was an action by J. D. Bickley against Commercial Bank of Columbia, S. C., commenced in February, 1892. The judge charged the jury as follows:

It is incumbent upon the plaintiff to prove the allegations of his complaint by the preponderance of the evidence, before he can recover; the burden of the proof is upon him. Has he sustained these material allegations of his complaint by the preponderance of the evidence? This is the main and important question for your consideration and determination. If he has done so, he is entitled to a verdict at your hands for the amount of the deposit, $800, with interest at the rate of six per cent. from the date of deposit, payable semi-annually, in accordance with the terms of the contract. If, however, he has failed to satisfy you by the preponderance of the evidence, your verdict should be for the defendant.

In determining this question, you are to consider all the circumstances which have been testified to in relation to the making of the deposit, the giving of the certificate of deposit and the disposition of the money by Mr. Iredell. If the money was handed to Mr. Iredell to be deposited in the "Commercial Bank, of Columbia, S. C.," and was so deposited, or went into the custody and control of the defendant bank, the bank would be liable, notwithstanding it was not one of the duties

of the president to receive deposits, and although he was not authorized as president to receive deposits or to give certificates therefor. If the money was given to Mr. Iredell to be deposited in the co-operative association, of which Mr. Iredell was the manager, and it was so understood by the parties at the time, then the plaintiff cannot recover in this action. And this would also be the case if it was understood that Mr. Iredell was to deposit it in the old partnership bank, of which Mr. Iredell was the manager.

In passing upon the question as to whether or not the deposit was made by the plaintiff with the defendant bank, you must look to the circumstances, and ascertain, if you can, the nature of the whole transaction and the understanding and intent of the parties. If you believe from the evidence that Mr. Iredell, the president of the defendant bank, asserted, at the time the deposit was made or the money was left with him, that the certificate delivered to the plaintiff was the certificate of the bank, and that the bank would be responsible therefor, and that this assertion was made under circumstances which were, in your opinion, sufficient to give the plaintiff the right to believe that it was the acknowledgment and act of the bank of which he was then president, and that it was with that bank the money was deposited, and with which the plaintiff was then dealing; and that the plaintiff was not dealing with him individually, and the plaintiff did at the time believe that such certificate was the acknowledgment and act of the defendant bank, then I charge you that the defendant is liable therefor.

Again, I charge you, that the principal is liable to third persons for the frauds, deceits, concealments and misrepresentations of his agent in the course of his employment, although the principal didn't authorize, or justify, or participate in, or, indeed, know of such misconduct. The principal in such case holds out his agent as a person fit to be trusted, and thereby, in effect, warrants his fidelity and good conduct in all matters within the scope of his agency. If the president of a bank commits a fraud relative to a subject that does concern his duty to the bank, in dealing with strangers and other persons having business with the bank, the corporation will be liable

to such third person or persons for such acts and misdeeds of its president and agent. In passing upon this question, you are to determine the credibility of all witnesses; that is a question for you; you have heard them testify, you have seen their manner of testifying, and you are to judge of the credibility of these several witnesses, and to give such weight to their testimony as in your judgment you think it deserves. You are to reconcile all conflicts in testimony; that is peculiarly your province.

I am requested by defendant's counsel to charge you the following propositions:

1st. "That the ordinary duties of a president of a bank do not authorize him to receive deposits, and a depositor who leaves his money with the president of a bank is not entitled to recover the amount from the bank, unless it is further shown that the money was actually received by the bank to the credit of the depositor, or that the president was especially authorized to receive deposits." I say, as general law, that proposition might be true, but so far as it conflicts with what I have already charged you, I refuse it.

2d. "That if the jury believe that the Bickley money was placed by Capt. Iredell to his credit as manager of the old bank, it cannot be said to have reached the bank as the money of the plaintiff." That I refuse to charge.

3d. "That if the jury believe that the plaintiff did deposit the money with C. J. Iredell, manager, either of the old bank or of the co-operative association, he cannot recover from the bank in this action." I have charged you on that subject, and in effect charged you that.

4th. "That the bank is not responsible for money obtained by Capt. Iredell by any unusual devices, and is responsible for the acts of its president only when within the scope of his authority and in the usual course of business." I so charge you.

5th. "That there is nothing on the face of the instrument sued on in this case to show that the defendant is responsible for the amount, and the word 'manager' after his name does not of itself indicate that he was contracting for the new bank."

I refuse to charge you that, because it involves the question of fact which you are to consider and determine.

6th. "That if the jury believe that Capt. Iredell did tell the plaintiff that 'the bank' would be responsible for the money, if he understood, or should have understood, the reference to be to the old bank, the jury cannot find for the plaintiff." I refuse to charge that.

7th. "That the burden is upon the plaintiff to show that the president of the bank had the authority to receive deposits." I decline to charge that.

8th. "That solitary instances of payment of funds to another officer than the receiving teller are impotent to alter established principles." As a general principle of law, I presume that to be so.

Mr. Lyles: Perhaps it might be well to call attention upon one point in the jurors' minds, where your honor said that the bank is liable for the frauds of its president. I think your honor did not clearly enough indicate to the jury that it was only his frauds in the conduct of the business which was committed to him.

The Court: What I did say was this, as I have it written here: "Now, if the president of a bank commits a fraud relative to a subject that does concern his duty to the bank." If you come to the conclusion, from the preponderance of the evidence, that the plaintiff is entitled to recover, the form of your verdict will be, we find for the plaintiff so many dollars—which will be the amount of this deposit, with interest at the rate of six per cent. per annum, payable semi-annually, from the date of deposit up to the present time—you will say, we find for the plaintiff so much money, writing it out in words, and not in figures. If you come to the conclusion that the money was not deposited in the Commercial Bank, and the defendant was not responsible for it, why the form of your verdict will be, we find for the defendant.

The jury found a verdict for the plaintiff for $873.20.

The defendant moved on the minutes for a new trial, which being refused, it appealed on the following grounds:

1. Because the plaintiff and other witnesses were allowed to testify orally as to the alleged agreement between the plaintiff and the defendant, when it appeared that there was a written agreement between him and C. J. Iredell covering the transaction, with no latent ambiguity therein, and without any allegation in the complaint of fraud, imposition or mistake.

2. Because the plaintiff and other witnesses were allowed to testify as to the conversations with C. J. Iredell, to connect the defendant with said agreement, and to contradict the terms thereof where it was ambiguous between the parties thereto, and bore no evidence upon its face that it was made in behalf of the defendants, and there was no allegation in the complaint of fraud, imposition or mistake.

3. Because the plaintiff was allowed to testify that said Iredell told him that the defendant was responsible for the certificate produced.

4. Because the plaintiff was allowed to testify that he supposed that he was depositing his money with the defendant bank, and relied upon it for the same.

5. Because the witness, Mrs. Gibson, was allowed to testify as to the contents of a certificate which she claimed had been paid to her by the defendant, when no notice to produce the same had been given to the defendant.

6. Because defendant's motion for a non-suit was refused.

7. Because, in his charge to the jury, that "if the money was handed to Mr. Iredell to be deposited in the Commercial Bank, of Columbia, S. C., and was so deposited, and went into the custody and control of the defendant bank, the bank would be liable, notwithstanding it was not one of the duties of the president to receive deposits, etc." His honor did not qualify the charge by any addition to the effect that the bank would be liable only in case the money went into its custody or control as the money of the plaintiff.

8. Because his honor charged the jury, that if they believed "from the evidence that Mr. Iredell, the president of the defendant bank, asserted at the time the deposit was made or the money was left with him, that the certificate delivered to the plaintiff was the certificate of the bank, and that the bank

would be responssble therefor; and that this assertion was made under circumstances which would, in his opinion, give the plaintiff a right to believe that it was an acknowledgment of the bank, of which he was then president, and that it was with that bank the money was deposited, and with which the plaintiff was then dealing, and that the plaintiff was not dealing with him individually, and the plaintiff did at the time believe that such certificate was the acknowledgment and act of the defendant bank, then I charge you that the defendant is liable therefor."

9. Because his honor did not, upon the request of the defendant, qualify his charge, "that the principal is liable to third persons for the frauds, deceits, concealments and misrepresentation of his agent in the course of his employment," by the statement that it was only for the frauds of such agent in the conduct of the business committed to him.

10. Because his honor refused defendant's first request to charge, "that the ordinary duties of a president of a bank do not authorize him to receive deposits, and the depositor who leaves his money with the president of a bank is not entitled to recover the amount from the bank, unless it is further shown that the money was actually received by the bank to the credit of the depositor, or that the president was specially authorized to receive deposits.

11. Because his honor refused to charge defendant's second request, "that if the jury believe that the Bickley money was placed by Captain Iredell to his credit as manager of the old bank, it cannot be said to have reached the bank as the money of the plaintiff."

12. Because his honor refused defendant's fifth request to charge, "that there is nothing on the face of the instrument sued on in this case to show that the defendant is responsible for the amount, and the word manager after his name does not of itself indicate that he was contracting for the new bank."

13. Because his honor refused defendant's sixth request to charge, "that if the jury believe that Captain Iredell did tell the plaintiff that 'the bank' would be responsible for the money,

if he understood, or should have understood, the reference to be to the old bank, the jury cannot find for the plaintiff."

14. Because his honor refused to charge defendant's seventh request, "that the burden is upon the plaintiff to show that the president of the bank had the authority to receive deposits."

15. Because his honor refused defendant's motion for a new trial, upon the ground that the verdict was contrary to the law and the evidence.

*Messrs. Lyles & Muller*, for appellant.

*Mr. J. S. Verner*, contra.

September 4, 1893. The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER. The action in this case was brought by the plaintiff to recover from the defendant the sum of eight hundred dollars, besides interest, alleged to have been deposited with defendant by the plaintiff. The complaint contains three paragraphs: 1st. The allegation that defendant is a corporation, duly organized under the laws of the State for the purpose of carrying on a general banking business in the city of Columbia. 2d. That on the 21st of October, 1890, the plaintiff deposited with defendant the above mentioned sum of money, which said sum defendant promised to pay to the plaintiff's order, one year after said date, with interest thereon at the rate of six per centum per annum, payable semi-annually from said date. 3d. That the said sum of money, with interest as aforesaid, is now due by plaintiff to defendant, and although plaintiff has made demand for the payment thereof, defendant refuses to pay the same. The defendant answered, admitting the allegations contained in the first paragraph, but denying each and every other allegation contained in the complaint.

For a better understanding of the questions presented by this appeal it will be well to state certain facts, as to which there seems to be no dispute. Some time in March, 1889, the defendant corporation was chartered, under the act entitled "An act to provide for and regulate the incorporation of banks in this State" (19 Stat., 212), and one C. J. Iredell was made its first president, and was such at the time of the trans-

action which forms the basis of this action. For several years previous to the incorporation of this bank, the said C. J. Iredell, in copartnership with one Levi Metz, had been conducting a private bank, under very much the same name as the defendant corporation, which was under the management of said Iredell, and he was in the habit of signing his name in the conduct of that business, "C. J. Iredell, manager." For the sake of convenience, this private bank will hereinafter be designated as the "partnership bank," while the defendant corporation will be designated as the "chartered bank." There was testimony tending to show that, prior to the organization of the chartered bank, the plaintiff had deposited money, on more than one occasion, with the partnership bank, receiving certificates of deposit signed "C. J. Iredell, manager;" and there was also testimony tending to show that after the chartered bank was organized, the partnership bank discontinued business, and Iredell opened an account on the books of the chartered bank in the name of "C. J. Iredell, manager," upon which were credited collections made for the partnership bank, and against which checks were drawn to pay claims against the partnership bank. Iredell also testified that he proposed to organize "a depositors' co-operative association," which he intended to carry on under the name of "C. J. Iredell, manager," but this scheme seems to have fallen through.

At the trial, and while the plaintiff was on the stand as a witness, a paper was introduced, of which the following is a copy:

"Columbia, S. C., October 21, '90. I hereby certify that James D. Bickley deposited with C. J. Iredell, manager, eight hundred dollars, payable to his order upon the return of this certificate properly endorsed. It is agreed that said sum of money shall remain on deposit for one year from date thereof, that interest on this amount shall be at the rate of 6% per annum, payable semi-annually." (Signed) "C. J. Iredell, Manager." Which was delivered to the plaintiff by Iredell when he got plaintiff's money. Against the objection of defendant, plaintiff was permitted to testify to the conversation which passed between Iredell and himself at the time the paper was

delivered to him, to the effect that Iredell assured him that his money would be deposited with the chartered bank, and that this paper was intended to evidence that fact. Appellant insists that this parol testimony was inadmissible, and the first four exceptions raise the question as to the admissibility of this testimony.

As is said by Mr. Justice Story in *Shankland* v. *Corporation of Washington,* 5 Peters, at page 394: "It is certainly very difficult to maintain that, in a court of law, any parol evidence is admissible substantially to change the purpose and effect of a written instrument, and to impose upon it a sense which its terms not only do not imply, but expressly repel." It is quite clear that the terms of this paper not only do not imply, but expressly repel, the idea, that the chartered bank was in any way bound thereby, or in any way referred to therein. On the contrary, the paper in express terms refers to, and purports to bind, a totally different person, for in law Iredell as manager of the partnership bank, or as manager of the Depositors' Co-Operative Association and as president of the chartered bank, are entirely distinct and different persons. So that even if it should be conceded that Iredell, as president of the chartered bank, had the power to bind the bank by such a paper as this (a concession which I am not now prepared to make), there is nothing whatever, either in the body of the paper or in its signature, to which alone we can look, which shows that he attempted or intended to exercise such a power. The rule is thus stated in 1 Greenl. Evid., sec. 275: "When parties have deliberately put their engagements into writing in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of a previous colloquium between the parties, or of conversation or declarations at the time when it was completed, or afterwards, as it would tend, in many instances, to substitute a new and different contract for the one which was really agreed upon, to the prejudice

possibly of one of the parties, is rejected.'' To same effect see *Falconer* v. *Garrison*, 1 McCord, 209.

It is very possible that if the parol testimony in question had been offered to show of what, or for whom, C. J. Iredell was manager, it would have been competent (inasmuch as the terms of the paper itself did not disclose that fact) under the cases of *Mechanics' Bank of Alexandria* v. *The Bank of Columbia*, 5 Wheat., 326; *Baldwin* v. *Bank of Newberry*, 1 Wall., 234; *Ligon* v. *Irvine*, 1 Rich., 502; *Dupont* v. *Mt. Pleasant Ferry Co.*, 9 Rich., 255. But here the evidence was offered for no such purpose. On the contrary, it was offered for the purpose of showing that the contract upon which the plaintiff sued was made with an entirely different person from the one named in the paper delivered to the plaintiff as evidence of said contract—the paper showing that the contract was made with C. J. Iredell, manager, while the parol testimony objected to was intended to show that it was made with the chartered bank through its president, and that, too, without the slightest evidence tending to show that the president had any authority whatever to make such a contract, or had ever, in any instance, signed his name as manager of the chartered bank, or had in any way ever been designated as such. The cases cited to show that a receipt may be explained by parol evidence, have no application, as the paper in question, an ordinary certificate of deposit, has none of the elements of a receipt, but, on the contrary, is more like an ordinary promissory note, for it is certainly an obligation to pay a specified sum of money at a time stated, with interest at a specified rate. In *Miller* v. *Austen*, 13 How., 218, a paper practically identical in form with this, was held to be a note, upon which the endorser was held liable, as in case of an ordinary note.

The respondent, however, relies strongly upon the case of *Steckel* v. *First National Bank of Allentown*, 93 Penn. St. Rep., 376, reported also in 39 Am. Rep., 758, where several cases are collated in a note. That case is not in point here, for several reasons. The opening sentence of the opinion is in these words: "The principal cause of complaint in this case is, that the learned judge of the court below withdrew from the jury

the consideration of the question of fraud, upon the ground that there was not sufficient evidence to submit it;" and in a subsequent part of the opinion the following language is found: "The plaintiffs, after ascertaining the fraudulent character of the transaction, tendered the certificate to the bank, and demanded the payment of the original deposit. In other words, they rescinded the contract on the ground of fraud. If their allegations are true, they had a right to do so, and proceed upon the original cause of action." From this it would seem that the action was based upon the ground of fraud, and as fraud and mistake constitute exceptions to the general rule as to the admissibility of parol evidence to explain or vary a written contract, it is somewhat difficult to understand the application of that case to the one now under consideration, where neither fraud nor mistake is alleged.

Again, in that case the deposit was made over the counter of the bank with the teller of the bank, in the presence of the cashier, officers specially charged with the safe keeping and handling the funds of the bank, while here the deposit is claimed to have been made with the president of the bank, an officer who does not ordinarily handle the funds of the bank, gives no bond, and who was not shown to have had any authority, either express or implied, to receive deposits, unless such authority is incident to his office as president—a matter which will be presently considered. Again, in that case it was shown that the plaintiffs kept a regular account with the bank, and were in the habit of making deposits and checking against the same in the usual manner, while here the transaction now in question seems to have been the first which the plaintiff claims to have had with the chartered bank, though there is evidence that the plaintiff had had similar transactions with the partnership bank, through the said C. J. Iredell. The same remarks apply, in the main, to the cases mentioned in the note [in 39 Am. Rep., 761], the strongest of which is *Zeigler* v. *First National Bank of Allentown*, 93 Penn. St. Rep., 393, in favor of plaintiff's view, where it also appeared that the plaintiff, Zeigler, could not read, and was, therefore, liable to be more easily imposed upon. But the case of the *First National Bank of Al-*

*lentown* v. *Williams,* reported in the same note above referred to, seems to be more like the case in hand; and there it was held that the bank was not liable for a deposit made with its president under the circumstances there stated.

It is urged, however, that the action here is not upon the written certificate of deposit, a copy of which has been set out above, and, therefore, the principles above stated do not apply. As has been heretofore said in *Park* v. *Brooks,* 38 S. C., 300, it is never technically accurate, though quite common, to speak of an action on a note, or other instrument in writing whereby one person promises to pay money to another, for, "properly speaking, a note is never the cause of action, but it is the breach of the promise evidenced by the note which constitutes the cause of action, and the action is upon such breach, and not upon the note." So here, while it is quite true that the plaintiff does not set out the certificate of deposit in his complaint, but simply alleges the making of the deposit of a certain sum of money, together with a promise to pay the same at the time stated, and a failure on the part of the defendant to comply with such promise, yet so soon as it appeared that the contract had been reduced to writing, no other evidence than such writing could be resorted to for the purpose of showing what were the terms of the contract, in the absence of any allegation of fraud or mistake. So that the circumstances that the action does not purport to be upon the certificate of deposit, cannot affect the question. It seems to me, therefore, that in any view which may be taken of the matter, the parol evidence objected to was inadmissible; and this being so, the motion for a non-suit should have been granted, as there does not seem to be any other evidence tending to show a contract between the plaintiff and the defendant bank.

While this would be sufficient to dispose of the appeal, yet it may not be amiss to consider very briefly the other grounds of appeal. The fifth ground of appeal cannot be sustained. If the paper in question was in court at the time, no previous notice to produce it was necessary. *Reynolds* v. *Quattlebaum,* 2 Rich., 140. Moreover, the object was to con-

tradict the testimony of C. J. Iredell by showing that the defendant had paid the witness interest on deposits at the rate of six per centum, and this the witness might have proved without reference to the paper, as it was collateral to the issue on trial. The sixth ground has been disposed of by what has already been said.

As to the seventh exception, in view of the fact that the real defence was, that plaintiff's money was deposited by Iredell in the defendant bank, not to the credit of the plaintiff, but to the credit of Iredell, manager, it seems to me that the charge on this point should have been qualified as demanded by defendant's first request to charge.

The eighth ground complains of error in instructing the jury as to the effect of the view which might be taken by them of the testimony hereinbefore held to be incompetent, and under that holding the eighth ground must be sustained.

The ninth ground cannot be sustained, for the charge shows that the instructions therein referred to were sufficiently guarded.

The tenth ground is based upon a misconception of the charge. The Circuit Judge did not refuse to charge, "that the ordinary duties of the president of a bank do not authorize him to receive deposits," and in the form in which this exception is stated, it cannot be sustained.

The eleventh exception cannot be sustained, as the request upon which it was based trenched upon the province of the jury, and, moreover, confined the issue between too narrow limits.

The twelfth exception is sustained. It is the province of the judge to construe written instruments, and certainly there was nothing on the face of the certificate of deposit to indicate that the defendant bank had any connection with it.

The thirteenth exception is open to the objection, that to charge as there requested would require the judge to invade the province of the jury, by instructing them as to the force and effect of the testimony.

The fourteenth exception must be sustained. If, as the Circuit Judge intimated, correctly, as I think, that to receive deposits is not one of the duties incident to the office of a president of a bank, then to make a bank responsible for a deposit so received, the burden of proof in a given case is upon the plaintiff to take his case out of the general rule, either by showing that the president in such case had express authority to do so, or that such authority should be inferred from all the circumstances surrounding the transaction, or that the money of the depositor was actually received by the bank as his money, in either of which cases the bank would be liable. But to make it liable, it is incumbent on the plaintiff to show that the exceptional circumstances exist. It is earnestly insisted by counsel for plaintiff that it is a duty incident to the office of president to receive deposits, and, therefore, that as the deposit sued for in this case was received by the person who was, at the time, president of the defendant bank, the bank is liable even if nothing else is shown. I am not prepared to accept this doctrine. On the contrary, it seems to me that the weight of authority, as shown by the cases cited by appellant's counsel,[1] as well as of reason, is opposed to such a view. The authorities cited by the counsel for plaintiff to sustain his view rest alone upon the case of *Hazleton* v. *Union Bank*, 32 Wisc., 34, in which the point here under consideration was not really decided, though there is a remark in that case which does sustain plaintiff's view. But that case is not authoritative here, and, so far as the point under discussion here is concerned, does not seem to rest upon sound principles. In addition to this, the question as to the general authority of a president to receive deposits does not properly arise in this case, as the Circuit Judge did not distinctly pass upon this question, and what he did say seemed rather to deny such general authority on the part of the president of a bank.

The fifteenth ground, as has been frequently said, raises no question which this court can properly consider.

---

[1] Morse Bank., 89–91, 153, 155, 157, 207; 10 Wall., 675; 2 Am. & Eng. Enc. L., 179, note; Story Agency, §§ 114, 115; Ang. & A. Corp., §§ 298, 302; 22 Gratt., 58; 16 W. Va., 578.

It seems to me, therefore, that the judgment of the Circuit Court should be reversed, and the case remanded to that court for a new trial; and this view having been concurred in by the other members of the court, it is so adjudged.